Filed on 8/7/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G064690 |
|    v. | (Super. Ct. No. 13WF3516) |
| RYAN PAUL MCALISTER, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Derek Guy Johnson, Judge. Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

When a criminal defendant is resentenced pursuant to statute, the defendant is often entitled to the benefit of any other ameliorative changes in the sentencing law since the time he was originally sentenced. But the application of new laws to older cases is not always straightforward, with this proceeding being a case in point.

Defendant Ryan McAlister appeals from a resentencing pursuant to Penal Code section 1172.75, which was enacted to retroactively dismiss any now-invalid one-year prison prior enhancements. That part of the resentencing was straightforward. The complication arose because McAlister had struck a plea deal in which he agreed to be sentenced to the upper term for attempted murder. Between the time he was sentenced and his resentencing, the Legislature amended Penal Code section 1170, subdivision (b), so that a court may impose the upper term of a sentencing triad only if a jury found an aggravating circumstance to be true, or if the defendant stipulated that an aggravating circumstance was true.[1] The question presented here is whether this sentencing change applies to McAlister's resentencing.

We conclude it does not. Section 1172.75, subdivision (d)(4), mirrors the conditions imposed by section 1170, subdivision (b), except it adds the following caveat: "Unless the court originally imposed the upper term . . . ." This means a court may reimpose the upper term at resentencing—even in the absence of a jury finding—if the court previously imposed the upper term. Although one court has held that this interpretation of section 1172.75 would create a potential Sixth Amendment violation, we do not share that concern and, therefore, apply the statute's plain meaning.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

McAlister also contends that a plain-language interpretation would violate the Equal Protection clause because other resentencing statutes do not contain an exception to the jury-finding requirement of section 1170, subdivision (b). Applying a rational basis review, we conclude the Legislature had reasonable grounds for treating section 1172.75 different from other resentencing statutes. Accordingly, we find no Equal Protection violation and affirm the judgment.

PROCEDURAL HISTORY

In 2014, McAlister pleaded guilty to two counts of attempted murder (§§ 187, subd. (a); 664, subd. (a); counts 1–2), shooting at an occupied motor vehicle (§ 246; count 3), first degree burglary (§ 460, subd. (a); count 4), unlawful possession of ammunition (§ 30305, subd. (a)(1); count 5), and possession of a useable quantity of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 6) With respect to count 1, McAlister admitted he personally used a firearm in the commission of the offense. He further admitted one prison prior allegation.

As part of his plea, and in exchange for the dismissal of premeditation and deliberation allegations, McAlister agreed to a stipulated sentence of 25 years in prison as follows: the upper term of nine years on count 1, plus a consecutive 10-year term for the firearm allegation, plus two years four months on count 2 (one-third the middle term), plus one year four months on count 4 (one-third the middle term), plus eight months (one-third the middle term) on each of counts 5 and 6, plus a consecutive one-year term for the prison prior allegation.

In 2024, McAlister was resentenced pursuant to section 1172.75. At the resentencing, the court dismissed his prior prison term enhancement and reduced his controlled substance conviction to a misdemeanor, reducing

appellant's total sentence from 25 years to 23 years 4 months. McAlister appealed.

DISCUSSION

I.

SECTION 1172.75, SUBDIVISION (D)(4), PERMITS REIMPOSITION OF AN UPPER TERM SENTENCE WITHOUT A JURY FINDING OR STIPULATION

In 2020, the Legislature amended section 667.5, subdivision (b), to eliminate the imposition of one-year sentencing enhancements for having served a recent prison term (a "prison prior"), except for certain sexually violent offenses. Two years later, the Legislature passed section 1172.75, which provides a mechanism to retroactively resentence defendants who had suffered a now-invalid prison prior. (*People v. Burgess* (2022) 86 Cal.App.5th 375, 379–380.)

That same year, 2022, the Legislature passed Senate Bill 567, which amended section 1170, subdivision (b), so that a court cannot impose the upper term of a sentencing triad unless a jury found an aggravating circumstance true beyond a reasonable doubt, or unless the defendant stipulated to the facts underlying a finding of aggravation. (*People v. Mitchell* (2026) 19 Cal.5th 729, 737–738 (*Mitchell*).) Settling a split of authority in the courts of appeal, our high court recently held that a defendant who pleaded to an upper term before this amendment, but is resentenced afterward, is entitled to the benefit of the amendment. If the prosecutor refuses to accept a middle term sentence, the defendant is entitled to withdraw the plea and proceed to trial. (*Id.* at p. 735–736.) The court reached this conclusion under the broad rule of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). (*Mitchell, supra,* 19 Cal.5th at p. 735.)

4

"Because the *Estrada* rule reflects a presumption about legislative intent, rather than a constitutional command, the Legislature . . . may choose to modify, limit, or entirely forbid the retroactive application of ameliorative criminal-law amendments if it so chooses." (*People v. Conley* (2016) 63 Cal.4th 646, 656.) The question in this appeal is whether the Legislature chose to do so in the context of a resentencing under section 1172.75.

We conclude it did. The text of section 1172.75 limits the retroactive application of section 1170, subdivision (b). Section 1172.75, subdivision (d)(4), states, "*Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.*" (Italics added.) In other words, this subsection repeats the substance of section 1170, subdivision (b), but exempts the application of that rule in cases where the court originally imposed the upper term. In *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 466–467 (*Brannon-Thompson*), the court found this language was dispositive: "Giving this language its plain meaning, it is evident the Legislature intended the new burden of proof amendments to section 1170, subdivision (b) apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing."

We are aware of only one decision that examined the specific language of section 1172.75 and concluded that a defendant who was previously sentenced to the upper term must, nevertheless, be resentenced to the middle or low term. In *People v. Gonzalez* (2024) 107 Cal.App.5th 312

5

(*Gonzalez*) the court acknowledged that "the plain language of section 1172.75, subdivision (d)(4), on its face, could be interpreted as not requiring proof of aggravating factors before reimposing an upper term sentence." (*Id.* at pp. 328–329.) Nevertheless, it concluded there was another way to interpret that language: it "simply *restrict[s] the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term, instead of creating a condition or exception independently justifying the imposition of the upper term." (*Id.* at p. 329.) In other words, the *Gonzalez* court read the statute to say that a court may only impose the upper term on resentencing if the upper term was imposed originally and if the facts underlying that sentence were proven to a jury or conceded by the defendant.

The *Gonzalez* court opted for this latter interpretation under the doctrine of constitutional avoidance, which provides that a statute should not be interpreted to violate the Constitution if another interpretation is viable. (*Gonzalez, supra,* 107 Cal.App.5th at p. 330.) The potential constitutional infringement the court identified was the Sixth Amendment right to a jury trial, though it did not explain precisely how interpreting section 1172.75 according to its plain language would violate the Sixth Amendment. (*Ibid.*)

Since *Gonzalez* was decided, at least two decisions have disagreed with it. (*People v. Dozier* (2025) 116 Cal.App.5th 700, 716, rev. granted February 11, 2026, S294597 (*Dozier*); *People v. Mathis* (2025) 111 Cal.App.5th 359, 373, rev. granted Aug. 13, 2025, S291628 (*Mathis*).) As the court explained in *Mathis*, it is *judicial factfinding* that implicates the Sixth Amendment, and neither McAlister's original sentence, nor his resentencing, involved any judicial factfinding. Nor does section 1172.75, subdivision (d), call for any judicial factfinding. (*Mathis*, at p. 373; *see People v. Lynch* (2024)

6

16 Cal.5th 730, 759 ["It is the requirement of additional factfinding that brings the Sixth Amendment into play."].) In the absence of judicial factfinding, a trial judge may exercise broad discretion to select a sentence, "which, 'everyone agrees,' encounters no Sixth Amendment shoal." (*Cunningham v. California* (2007) 549 U.S. 270, 294.) As the *Dozier* court noted, the Legislature has broad discretion to make ameliorative sentencing changes that are either not retroactive, partially retroactive, or fully retroactive. "By not extending the new heightened factfinding requirements to defendants . . . previously sentenced to an upper term, the Legislature left them in the same position they were in before resentencing—unable to take advantage of a non-retroactive ameliorative change in the law." (*Dozier, supra,* 116 Cal.App.5th at p. 716.)

We conclude that the *Brannon-Thompson/Mathis/Dozier* line of cases is more persuasive. *Gonzalez* employed a strained interpretation of the plain language of section 1172.75, subdivision (d)(4). We think it quite clear that by prefacing subdivision (d)(4) with "Unless the court originally imposed the upper term . . .," the Legislature intended to carve out an exception to the requirement that a jury finding or a stipulation undergird an upper term sentence. Although *Gonzalez's* strained interpretation may have been justified in the face of a genuine conflict with the Constitution, we find no such conflict in the Sixth Amendment because, as other courts pointed out, no judicial factfinding is involved in reimposing a term previously stipulated to by the defendant. Accordingly, we hold that there was no error in reimposing the upper term in McAlister's resentencing.

## II.

SECTION 1172.75, SUBDIVISION (D)(4), DOES NOT VIOLATE THE EQUAL

PROTECTION CLAUSE

We must address one additional argument raised by McAlister that, so far as we can tell, has not been addressed in the published caselaw: an Equal Protection claim. McAlister contends our interpretation of section 1172.75, subdivision (d)(4), violates the Equal Protection clause of the 14th Amendment because the language "Unless the court originally imposed the upper term" does not apply to defendants who are resentenced under other resentencing provisions. Specifically, McAlister points to resentencing under sections 1170.18 and 1172.1 as examples of resentencing provisions that do not contain a similar exception.

" 'The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' "(*In re Gary W.* (1971) 5 Cal.3d 296, 303.) "At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288, (*Chatman*).)

"The degree of justification required to satisfy equal protection depends on the type of unequal treatment at issue. Courts apply heightened scrutiny when a challenged statute or other regulation involves a suspect classification such as race, or a fundamental right such as the right to vote, and accordingly will demand greater justification for the differential treatment. [Citations.] But when a statute involves neither a suspect classification nor a fundamental right, the 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the

8

statute is rationally related to a legitimate state interest.'" (*People v. Hardin* (2024) 15 Cal.5th 834, 847.) McAlister concedes that rational basis is the appropriate review here.

"The rational basis test is extremely deferential and does not allow inquiry into the wisdom of government action." (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 858.) The test asks "if there is any reasonably conceivable state of facts that could provide a rational basis for the [difference in treatment]." (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313.) Because the Legislature is not required to articulate the basis for its decisions, our analysis "may be based on rational speculation unsupported by evidence or empirical data." (*Id.* at p. 315.) It is ultimately the appellant's burden to "'negative every conceivable basis which might support'" the Legislature's distinction. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973) 410 U.S. 356, 364.) We will uphold the legislative action "'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [Legislature's] actions were irrational.'" (*Gregory v. Ashcroft* (1991) 501 U.S. 452, 471.)

The different groups McAlister points to are defendants resentenced under section 1172.75, as he was, compared with defendants resentenced under either section 1170.18 or 1172.1.[2]

Section 1170.18 was passed in 2014 as part of Proposition 47, which reclassified certain theft and drug offenses from felonies to misdemeanors. Section 1170.18 provides that a person serving a felony

---

[2] We assume, without deciding, that a resentencing under these provisions would require the court to apply section 1170, subdivision (b).

9

sentence for what was redesignated as a misdemeanor is entitled to resentencing.

Section 1172.1 provides broad authority for the trial court to recall and resentence a defendant on its own motion, or at the recommendation of a law enforcement or prosecutorial agency, and is generally applied where sentencing laws have changed and the interests of justice call for resentencing. A defendant is not entitled to petition for recall and resentencing under this section. (§ 1172.1, subd. (c).) Only the court or one of the listed law enforcement or prosecutorial agencies may file such a petition.

We conclude there are at least two rational justifications for exempting defendants resentenced under section 1172.75 from having their upper terms revisited pursuant to section 1170, subdivision (b).

First, it seems likely that such a resentencing would create a large administrative and financial burden that the Legislature could have concluded was undesirable. Prison-prior enhancements were extremely common. And the context of section 1172.75 shows that the Legislature was particularly sensitive to the administrative burden the resentencing scheme could impose. Section 1172.75 provides no mechanism for a defendant to initiate a resentencing proceeding and instead required the Department of Corrections to provide a list of defendants serving a prison prior and required the court to automatically resentence defendants on the list. (*People v. Newell* (2023) 93 Cal.App.5th 265, 268; § 1172.75, subd. (b).) The Legislature imposed strict deadlines by which that process was to be completed. (§ 1172.75, subd. (b)–(c).) The Legislature could have reasonably concluded that it would have been too costly and time consuming to revisit every upper term sentence pursuant to section 1170, subdivision (b).

10

(See *People v. Chatman* (2018) 4 Cal.5th 277, 290 ["Preserving the government's financial integrity and resources is a legitimate state interest."].)

Second, given that prison-priors were usually a small fraction of a defendant's overall sentence (particularly for defendants who received an upper-term felony sentence), the Legislature could have concluded that defendants who suffered an upper term sentence were undeserving of having that aspect of their sentence revisited. By contrast, sections 1170.18 and 1172.1 apply respectively to situations where a crime was changed from a felony to a misdemeanor and where a change in the law rendered an existing sentence unjust. The Legislature may have deemed those to be weightier situations that, in the interests of justice, called for a more expansive resentencing, even for defendants whose crimes previously warranted an upper term sentence. Those are value judgments the Legislature is entitled to make, and it is within the Legislature's broad authority to provide for a partial resentencing rather than a complete resentencing.

For both reasons, there is no Equal Protection violation.

DISPOSITION

The judgment is affirmed.


                              SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


GOODING, J.